## KENDALL *against* LEE.

The bare receipt of assets is not the commencement of an administration of them; but for wasting and converting them by the first administrator, an administrator *de bonis non* has no title to sue at law or in equity; the remedy being immediately by the creditors or parties ultimately entitled.

A bond taken by an executor or administrator for the debt of a decedent, discharges the old duty, and creates a new one; and an administrator *de bonis non* could not sue on such bond.

Evidence which should not have an influence upon the minds of the jury, should not be heard by them. A judge renders his best service to the cause of justice, when he prevents a jury from disregarding the law, by depriving them of a pretext for it.

Appeal from the Circuit Court of *Northumberland* county, held by *Gibson,* C. J.

*Samuel Kendall* died intestate, and his real estate, by virtue of an order of the Orphans' Court, was sold by his administrator, *John Kendall,* to *Joseph Wallis,* who purchased for *James Lee.* Bonds were given by *James Lee* and *John Shriner* his security to *John Kendall,* for the purchase money. These bonds were sued, and judgment obtained thereon for $679 21, in April, 1820. Upon this judgment executions were issued, and in 1823 were levied upon *James Lee's* land, which was sold to *John Cowden* for $125. This money was brought into court, and part of it appropriated to another judgment. *John Kendall* died; his death was suggested on the record, and his administrators, *John Miller* and *John Beckle* were substituted, in whose names, as administrators, a *scire facias* was issued against *James Lee* and *John Shriner,* to continue the lien of the original judgment. It was upon the trial of the issue upon the plea of payment, with leave, &c. put into this *scire facias,* that the questions in this case arose. After the foregoing facts had been established, the defendants gave evidence, that after the death of *John Kendall* letters of administration, *de bonis non,* upon the estate of *Samuel Kendall,* were issued to *Joseph Kendall;* and then offered in evidence a receipt of *Joseph Kendall* to

(Kendall *v.* Lee.)

*James Lee*, for $326 87, on account of the judgment of *John Kendall* v. *Lee* and *Shriner*.    This was objected to by the plaintiff, on the ground that *Joseph Kendall*, as the administrator *de bonis non* of *Samuel Kendall* had no right to receive the money; that the judgment could only be discharged by a payment to *John Kendall's* administrators.    The court sustained the objection and rejected the evidence.    The defendant then offered in evidence the following agreements, entered into between *John Cowden* and *James Lee* after *Cowden* purchased *Lee's* property; and between *Joseph Kendall* and *James Lee*.

"A memorandum of an article of agreement between *John Cowden* and *James Lee*, both of *Northumberland*, county of *Northumberland*, and state of *Pennsylvania*, Witnesseth, that the 29th day of November last, *John Cowden* purchased at sheriff's sale, in *Sunbury*, the farm of *James Lee*, on the North Branch of *Susquehanna*, near *Northumberland*, containing one hundred acres, more or less, for the sum of one hundred and twenty-five dollars. Now it is agreed that *Cowden* grants to *Lee* the privilege of disposing of the said farm, within three years, on condition, that the said *Lee* pays to the said *Cowden* the amount of the purchase money, with interest; also, the amount of a judgment and book account, with interest, that *Cowden* holds against the said *Lee:* whatever surplus money remains from the proceeds of the sale of the farm, to be at the disposal of *Lee; Cowden* is considered as sole owner of the farm, to rent and receive the proceeds of the same; granting unto *Lee* the privilege of taking what fire-wood he may want for his own house.    As witness our hands and seals, this 23d day of December, 1823."

"Articles of agreement made between *Joseph Kendall*, of *Reading*, administrator *de bonis non* of *Samuel Kendall*, deceased, of one part, and *James Lee*, of *Northumberland*, of the other part, Witnesseth, that *John Cowden*, Esq. and wife, of *Northumberland*, did convey to the said *Joseph Kendall* a tract of land, containing 100 acres, strict measure, lying in *Point* township, *Northumberland* county, adjoining land of *George Grant* and others, which the said *Cowden* purchased at sheriff's sale, on the 29th day of November last, in the town of *Sunbury*, as the property of *James Lee*.    Now the said *Joseph Kendall*, agrees to rent the aforesaid premises to the said *James Lee*, for one year from the 1st day of January, 1824; for the sum of $36, to be paid to the said *Joseph Kendall* at the expiration of the year.    The said *Lee* is to cut no more timber than is wanted for firewood on the premises, and to keep the fences in repair on said land, and to leave the farm in as good repair as he receives it; to farm the land as is customary, and to pay the taxes.    Now the said

484      SUPREME COURT     [*Sunbury,*

(Kendall *v.* Lee.)

*Joseph Kendall*, sympathizing with the said *James Lee*, agrees with him that if he, the said *Lee*, can secure a purchaser for said land, between now and the first of January, 1825, who will pay in cash, or on such conditions as the said *Kendall* will approve, the said *Lee* is to have credit on a judgment against *John Shriner*, Sen. and *James Lee*, recorded in *Sunbury* for all sums which he can get more than $600, besides paying the said *Kendall* for travelling, and other necessary expenses in conveying said land. Now, if the said *Lee* pays the rent as per agreement, no interest is to be paid on the $600; but if the rent is not paid, it will be added to the $600, and then all sums which he can get for the land above $636, besides those travelling and other expenses, shall be on account of the above judgment in favor of *John Kendall*. *Kendall* is considered the sole owner of said land, to rent and to receive the same; the said *Kendall* further grants the said *Lee* as much fire-wood as he may want in his own family. Witness our hands, this 21st of January, 1824.

Should *James Lee*, within the above stated time, procure a purchaser who will pay so much for the above premises, that the amount above the $600 should more than pay the above judgment, the balance the said *James Lee* shall receive for his own private use."

And again, in connection with these agreements offered the receipt of *Joseph Kendall*, before rejected, accompanied by parol proof, that *Miller*, the administrator of *John Kendall*, ratified and adopted the agreement. This offer was also rejected, and the cause went to the jury, who, under the direction of the court, found a verdict for the plaintiff.

The defendant appealed.

*Lashells* and *Bellas* for the appellant.

Upon the death of an administrator, his successor, the administrator *de bonis non*, is entitled to have all the securities of the estate, which were in the hands of the first administrator; the bond, then, upon which the original judgment in this case was rendered, and the judgment itself, were part of the assets of the estate; and being so, it was perfectly competent for the administrator *de bonis non* to receive the money and receipt for it in discharge of the judgment. Cited *Stat.*, 17 *Chas.* 2 *Chap.*, 8. *Robt. Dig.*, 369. *Coxe's Dig.*, 726, No. 41. *Bank of Pennsylvania* v. *Jacobs*, 1 *Penn. Rep.*, 474. Upon the same principle the agreements should have been received, together with the receipt offered; but when accompanied by proof that they were ratified by the administrator of the first administrator, in whose name the judgment was, we can

(Kendall *v.* Lee.)

conceive no rule of law or just policy which would exclude the evi-
dence.

*Greenough* for appellee.

The money claimed to be recovered in this suit is the proceeds
of the sale of lands of the intestate; for the right appropriation
of which the administrator gave security to the Orphans' Court;
would it not be a breach of the recognizance thus entered into, if
the purchase money were permitted to go into the hands of an ad-
ministrator *de bonis non,* who had given no security at all for its
rightful appropriation? The administrator *de bonis non* has juris-
diction only over the goods and chattels-of the intestate, which re-
mained *unadministered.* Certainly the judgment against *Lee*
and *Shriner* was not assets unadministered.

The opinion of the court was delivered by

GIBSON, C. J.—That the administrator *de bonis non* derived an
authority from the grant of administration to give an acquittance
for this money, will hardly be pretended. He was entitled to the
assets remaining *in specie,* whether in money or goods, and wheth-
er in the hands of the late administrator or outstanding. The bare
receipt of assets is doubtless not the commencement of an admin-
istration of them; but for wasting or converting them, an adminis-
trator *de bonis non* has no title to sue at law or in equity, the reme-
dy being immediate by the creditors or parties ultimately entitled.
*Coleman* v. *McMurdo,* 5 *Rand.,* 51. And the same law seems
to have been held in *Allen* v. *Irwin,* 1 *Serg. & Rawle,* 544. But
the principle has technical reason, as well as authority, to support
it. The Ordinary in England, or the Register here, has no juris-
diction of any thing that was not a part of the decedent's personal
estate at his death; nor power to commit the administration of any
thing else to his officer. An outstanding debt may, with strict
propriety, be said to remain *in specie,* the chose in action of the
decedent, though suit were brought to recover it by the first ad-
ministrator, that being but a means to procure the receipt of it,
which does not confound it with the administrator's own property;
and for this reason an administrator was entitled by the common
law to a new action, instead of an execution of the first administra-
tor's judgment, since given him by statute, as he still is to the pro-
ceeds of his execution when brought into court. But it never has
been held, here or elsewhere, that a bond taken by an executor or
administrator for the decedent's debts, does not discharge the old
duty and create a new one. The instances in *Roll's Abr.* 602; 6 *Mod.*
91, and 10 *Mod.* 315, are authorities directly in point. An action can
be maintained on it only by the obligee; and that no judge has ven-

(Kendall *v.* Lee.)

tured, in these days of juridical reform, to say that even he can sue on it in a representative character, is sufficient in all reason to prove that it creates but a personal duty.* But were all this otherwise, there is another reason, which I take to be conclusive,—the bond on which this judgment has been obtained, was given for the price of the decedent's land sold by the first administrator, by virtue of an order of the Orphans' Court.

The commission of an administrator *de bonis non,* extends but to the residue of the goods committed to the first administrator by the original grant. What these were is perceptible at a glance, in the bond required by the act of 1794, the condition of which is, that the administrator shall "administer according to law, the *goods, chattels* and *credits* of the deceased, *at the time of his death."* These are the subjects of an administration proper, and precisely of that which is granted by the Register here, in the same way that it is granted by the Ordinary in England, where an administrator can have no business, with the real assets, actual or contingent; and where the bond required by the 22d and 23d *Car.,* 2 *c.* 10, is nearly word for word the same as that required by our act of assembly. The business of an administration proper, then, relates to but what was the personal estate of the deceased at his death; and to that only does the security given to the Register extend. For this reason it is that an administrator who sells real estate, gives additional security; and not to the Register, but to the Orphan's Court from which he derives his authority, for the faithful execution of the trust, and payment of the money to such persons as the court, by its decree, may direct. And thus far the law was determined in *Reed* v. *The Commonwealth,* 11 *Serg. & Rawle,* 441. In the event of his death, then, who shall perfect his administration of the real assets, and save the condition of his bond? To say nothing of the inability of his personal representative to put those assets into the hands of any one not designated by the Orphans' Court without forfeiting the bond, it is plain, that if he retains them with a view to a performance of the trust, the parties beneficially entitled will have a double security, and that if they are put into the hands of the administrator *de bonis non,* they will have no security at all: ought not that alone to be decisive? But the power of such an administrator is derived exclusively from the grant of the Register, which extends not beyond his own jurisdiction, and consequently not to the real

---

*In *Hosier* v. *Arundel,* 3 *Bos. & P.* 7., *Lord Alvanly,* though evidently disposed to favor the right of the executor to sue in a representative character, wherever the thing to be recovered would be assets, was constrained to admit that he cannot so recover on a bond made to himself, and for this very reason, *because an administrator de bonis non could not sue on it,* or prevent the personal representative of the first administrator from retaining.

(Kendall *v.* Lee.)

assets.   How, then, can he succeed to a title derived from a decree to which neither he nor the Register was party or privy? The special administration under the decree of the Orphans' Court, could not pass as an accessary by the grant of an officer who did not create it, and consequently had no power to transfer it.   It is no answer to this last objection, to say that it rests on technical grounds; nor to the previous one, that an administrator is entitled to administer the surplus proceeds of an execution levied of land, though he give no additional security, and though the Register from whom he derived his authority, had no jurisdiction of the subject-matter. All jurisprudence is founded more or less, in artificial reason which cannot be disturbed without endangering the superstructure; and for the rest, the right of an administrator, to have, without security given, the proceeds of land converted by an execution, is a consequence forced on the courts by the necessity arising from the want of legislative provision, and not the legitimate subject of an inference applicable to a case in which there is no such necessity. A more plausible inference might be drawn from the provision which authorizes an administrator *de bonis non,* to execute the deed in the event of the administrator's death, without having completed the title.   That duty, however, like the agency of a sheriff, whose predecessor has died in similar circumstances, is purely ministerial, and without relation to the trust of the money. In fact, where there is no administrator *de bonis non,* the law allows the Orphans' Court to use the sheriff, as an instrument to pass the title; yet no one ever suspected that his agency in this particular, gives him a right to demand the money of the administrator's representative.

But it is said, that proof of an authority from one of the plaintiffs, for the administrator *de bonis non,* to receive the money, was offered at the trial and rejected.   To determine that, it is necessary to ascertain the circumstances.   By virtue of an execution on the present judgment, the land of the defendant *Lee* had been sold to Mr. *Cowden* for a small sum, who agreed to permit *Lee* to dispose of it for his own benefit, on condition that he would re-imburse *Cowden* what he had paid to the sheriff, and also discharge two other debts, which he owed him.   *Cowden* subsequently conveys to the administrator *de bonis non,* who in turn lets the land to *Lee,* with permission to sell it in a given time, and credit the present judgment with the residue of the purchase money, *having first paid six hundred dollars, and a small sum for expenses, due the administrator de bonis non, in his own or another's right;* and it is the ratification of this agreement by one of the plaintiffs, that was offered to be proved.   The offer then disclosed an agreement between a debtor and one of his creditors, who hav-

(Kendall *v.* Lee.)

ing become the owner of the debtor's land at an undervalue, permitted him to sell it, and on condition that he would first pay the creditor's debt, and apply the residue of the purchase money to another debt due by him to another person.   Was there any thing in that, like an authority for the first named creditor to receive both debts?   Had he stood in the relation of a stranger to the decedent in whose right the judgment was obtained, no one would imagine that such a thing was contemplated.   But he certainly was a stranger to the debt, and there is the same reason why he should not be supposed to exercise the ownership of it.   In its letter and its spirit, then, the whole effect of the agreement as ratified by one of the plaintiffs, was that the proceeds of the sale should go to satisfy both debts, the one due the administrator *de bonis non*, having a preference; but that surely implied no authority in any one hand to receive for both.   It is said, however, that the question of authority was for the jury, who might have found in favor of the affirmative, had the evidence of it been left to them.   That is, in a very few words, a very satisfactory argument for its rejection. It is in cases like the present, where to avoid a real or fancied hardship, the jury are predisposed to find in a particular way, on a mere show of evidence, that rules of competency produce their choicest fruit, and are therefore to be most sternly enforced.   The judge renders his best service to the cause of justice, when he prevents a jury from disregarding the law, by depriving them of a pretext for it.   But was the existence of the authority, really a question of fact?   It depended on the construction of a written agreement between the administrator *de bonis non*, and one of the defendants, which was ratified, as it is said, by one of the plaintiffs.   Was that for the jury?   The counsel himself did not treat it as such.   Instead of apprising the judge that such was the drift of the matter, and advancing directly to the point proposed, as he certainly would have done, had he felt himself warranted to assert the existence of an authority *in* fact, he proposed to prove the bare fact of ratification, and leave it to its legal consequences.   This being the main, perhaps the only point in the cause, we see no reason to disturb the verdict.

HUSTON, J. and ROSS, J. dissented.

Judgment affirmed.